IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MATTHEW WILHERE                    :          CIVIL ACTION
                                   :
              v.                   :
                                   :
DELAWARE COUNTY, et al.            :          NO. 09-22


MEMORANDUM AND ORDER


McLaughlin, J.                                April 1, 2010

        The plaintiff was arrested and charged with disorderly
conduct on January 8, 2007, in a Holiday Inn parking lot in
Essington, Tinicum Township, Pennsylvania.  Mr. Wilhere, a part-
time bartender at the hotel, was participating in a picket line
at the time of his arrest.  Mr. Wilhere was arrested after three
warnings were given over his use of a large flashlight while
picketing.  He was subsequently convicted of disorderly conduct.

        Mr. Wilhere was tasered in the course of his arrest.
He raises excessive force and <u>Monell</u> claims pursuant to 42 U.S.C.
§ 1983 and state law tort claims in relation to the tasering and
other incidents surrounding his arrest.[1]  He brings his suit
against the individual arresting officers, Deputy Sheriffs Joseph
Nigro, Manuel Zayas, and Lynn Mahoney, and against Delaware
County.

_____

        [1]    The plaintiff has withdrawn a state law claim for
intentional infliction of emotional distress against Deputy
Zayas.  <u>See</u> Pl.'s Opp'n at 2, 23.

The defendants move for summary judgment on all of the plaintiff's claims. They argue that, because the plaintiff was tried and convicted of disorderly conduct, the plaintiff may not dispute the facts alleged at a hearing held on the disorderly conduct charge. Based upon those facts, the defendants argue that they are entitled to summary judgment because (1) the individual defendants are protected by qualified immunity, (2) there is no evidence that would support an excessive force claim against Deputies Nigro and Mahoney, (3) there is no evidence supporting a Monell "policy or practice" claim against Delaware County, and (4) the plaintiff's state law claims against Deputy Zayas have no merit.

The Court denies the defendants' motion for summary judgment. The Court finds that the plaintiff's conviction does not preclude it from considering the plaintiff's version of the facts, because, first, it is not clear which facts led to the plaintiff's conviction and, second, even if the Court takes the facts alleged at the hearing as true, a jury still could find the defendants' use of a taser to be excessive in this case. The Court, therefore, reviews the evidence according to the ordinary summary judgment standard and finds that it cannot grant summary judgment for the defendants because several material facts are in dispute.

I.    <u>The Summary Judgment Record</u>

        The facts surrounding Mr. Wilhere's January 8, 2007, encounter with Deputy Sheriffs Zayas, Nigro and Mahoney are sharply disputed.  Although the parties generally agree to the events and circumstances leading up to the incident, their accounts diverge significantly as to the material details of the incident itself.

    A.    <u>Undisputed Events Leading Up to the Arrest</u>

        Mr. Wilhere participated in the strike at a picket site outside of the Holiday Inn, where he worked as a part-time bartender and was a union member.  The individual defendants were at the strike site, charged with managing the site and enforcing the terms of a stipulated injunction between the employer and the striking union.

        Two picket sites were permitted under the agreement, with a maximum of three picketers allowed at a time at each. Deputies Nigro and Zayas were in their vehicle at the site where Mr. Wilhere picketed.  Deputy Mahoney was in her vehicle with another officer at the other site.  Deputy Mahoney was the senior deputy sheriff present.

        Mr. Wilhere carried a large flashlight, and the defendants' allege that Mr. Wilhere shined the light at on-coming cars and into the Holiday Inn itself.  Deputy Nigro, concerned

that the light was creating a disruption and the potential for a car accident, approached Mr. Wilhere to talk to him about the use of the light.  Deputy Nigro told Mr. Wilhere not to shine the light into cars.  Mr. Wilhere agreed to comply.

Hotel operations manager Howard Showell drove into the parking lot some time later.  Mr. Wilhere's light shined into Mr. Showell's car.  Mr. Showell parked and went to speak with the deputies.  Mr. Showell told the deputies that the light reflected through his rearview mirror and blinded him.  The defendants believed that Mr. Wilhere deliberately shined the light through Mr. Showell's back window.

Deputy Nigro approached Mr. Wilhere a second time and again discussed the use of the light.  The defendants claim that, after speaking with Deputy Nigro, Mr. Wilhere temporarily stopped shining the light into the cars.  The defendants allege, however, that he eventually returned to shining the light into cars as they pulled into the parking lot and also began to shine the light into the Holiday Inn's restaurant and bar.

About thirty minutes later, Deputy Nigro approached Mr. Wilhere a third time, this time joined by Deputies Mahoney and Zayas.  Deputy Nigro had contacted Deputy Mahoney on the radio and asked her to bring a copy of the injunction for review. After reviewing the injunction order, the three deputies decided to order Mr. Wilhere to stop using the flashlight.  Deputy Zayas

said words to the effect of "[s]omebody is going to get locked up tonight" as the deputies approached the picketers.

B.    <u>The Arrest</u>

At this point, the facts become almost entirely disputed.  The Court, therefore, will describe the plaintiff's version of the facts, followed by the defendants' version.

1.    <u>The Plaintiff's Account of the Arrest</u>

According to Mr. Wilhere, the deputies first spoke to his co-picketer, Karen Trout, who was making arrangements for the next day's strike shift.  Deputy Zayas approached Ms. Trout and said that she was the fourth person at the site at that time, in violation of the injunction's requirement of no more than three picketers at the site.  Mr. Wilhere then stated, "This is ridiculous."  He claims he was 15 to 20 feet away from Ms. Trout and Deputy Zayas at the time, and 20 to 30 feet away from Deputies Mahoney and Nigro.  He claims that Deputy Zayas then may have said something about Mr. Wilhere's light, to which Mr. Wilhere again said, "This is ridiculous," and proceeded to shine the light on an empty van parked in the hotel's fire lane. Deposition of Matthew Wilhere ("Wilhere Dep.") at 112-13, attached as Ex. C to Defendants' Motion ("Def. Mot.").

After Mr. Wilhere shined the light on the van, Deputy Mahoney came up to him and struck him in the right arm or shoulder. The blow knocked the light out of his hand and forced him back a step or two. He then proceeded to raise his arms and hands to show that he was not being physically threatening or attempting to intimidate the sheriffs. Mr. Wilhere repeated, "You have no right touching me. You have no right hitting me. You don't hit me. You don't hit me." Wilhere Dep. at 119-20.

Deputy Mahoney then stepped directly in front of Mr. Wilhere, while Deputy Nigro approached him on his left side. Deputy Nigro stepped between Mr. Wilhere and Deputy Mahoney and began bumping Mr. Wilhere with his chest and stomach. Both deputies were yelling and baiting Mr. Wilhere. Mr. Wilhere believed that the deputies were trying to get him to strike back at them. Wilhere Dep. at 120-21.

Deputy Zayas then appeared at Mr. Wilhere's left side and began digging his hand and what appeared to be a cell phone into Mr. Wilhere's groin area. Mr. Wilhere instructed Deputy Zayas to leave his genitalia alone. Deputy Zayas taunted him while he prodded him. Wilhere Dep. at 125-29.

Deputy Zayas then applied the taser without warning and Mr. Wilhere felt the immense physical pain of the taser in his groin. Mr. Wilhere states that, because his jacket was waist-length and left his upper legs exposed, Deputy Zayas had access

to safer areas of his body to apply the taser. Wilhere Dep. at 139-42.

Deputy Nigro then grabbed Mr. Wilhere from behind. Mr. Wilhere, confused and disoriented by the taser, twisted and swung his body, possibly knocking Deputy Nigro into some bushes. Wilhere Dep. at 143.

Mr. Wilhere was told that he was under arrest. The deputies attempted to handcuff him from behind, but, due to a pre-existing shoulder injury and the thickness of his jacket, Mr. Wilhere did not have the range of motion to bring his hands together behind his back. Two sets of handcuffs were eventually used, and, when one set fell off of his arm, Mr. Wilhere submitted himself to the sheriffs and was re-cuffed. Wilhere Dep. at 149-50.

While the deputies escorted him to their vehicle, Mr. Wilhere said to Deputy Zayas, "Dude, you hit me in my [genitals]." This prompted Deputy Mahoney to laugh and Deputy Zayas to say, "You want some more? You want it again?" Wilhere Dep. at 149.

Ultimately, Mr. Wilhere was placed in the back of Tinicum Township Police Officer William Righter's car. Mr. Wilhere requested that Officer Righter "keep the sheriffs away from me." Deposition of William Righter ("Righter Dep.") at 17:12-19, attached as Ex. S to Pl. Opp'n.

2.  <u>The Defendants' Account of the Arrest</u>

For the purposes of the motion, the Court will use the facts as presented in the Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment as the defendants' facts.  Although the Court recognizes that the three deputies' testimonies all differ significantly as to the details of the incident, the Court does not need to highlight the discrepancies and contradictions of those accounts to find disputed issues of material fact in this case.  Even if the Court treats the streamlined version of the facts presented in the defendants' motion as "the defendants' facts" for the limited purposes of deciding this motion, the plaintiff has presented sufficient evidence to withstand summary judgment.

According to the defendants' facts, Mr. Wilhere was commanded for a third time to stop using the flashlight.  Mr. Wilhere became angry and verbally combative, stalking back and forth.  He continued to shine the light into the Holiday Inn and vehicles and shouted "[t]his is ridiculous."  Defendants' Statement of Undisputed Material Facts ("Def. Facts") at ¶¶ 14-16 (<u>citing</u> Report of Deputy Lynn Mahoney ("Mahoney Report"), attached as Ex. F to Def. Mot.; Deposition of Lynn Mahoney ("Mahoney Dep.") at 165-175, attached as Ex. E to Def. Mot.).

Either Deputy Zayas or Mahoney then told Mr. Wilhere to put the light down and calm down.  Deputy Zayas and Mr. Wilhere

then began to argue.  Deputy Zayas felt spit from Mr. Wilhere's face as Mr. Wilhere screamed "Fuck that!" to the sheriffs' requests to put the flashlight down.  Deputy Mahoney then also approached Mr. Wilhere and again instructed him to put the light down.  Mr. Wilhere proceeded to scream in Deputy Mahoney's face, and she stated that their faces were so close that their noses touched.  Def. Facts at ¶¶ 18, 21-23 (<u>citing</u> Mahoney Dep. at 170, 173-74; Deposition of Manuel Zayas ("Zayas Dep.") at 38, 79-80, attached as Ex. G to Def. Mot. ).

Deputies Nigro and Zayas then interceded to break Mr. Wilhere and Deputy Mahoney apart.  Mr. Wilhere raised his arms and continued to be belligerent and disorderly, exclaiming, "Now what are you going to do?"  Deputy Zayas told Mr. Wilhere that he was under arrest.  The sheriffs attempted to handcuff Mr. Wilhere, but he resisted.  A scuffle ensued.  Def. Facts at ¶¶ 24-28 (<u>citing</u> Mahoney Dep. 174, 150-51; Transcript of Hearing in <u>Commonwealth v. Wilhere</u> ("Hearing Trans.") at 8, 14, attached as Ex. A to Def. Mot.).

Deputy Zayas then applied his taser to Mr. Wilhere's "upper leg" in "drive stun mode," in which the taser is applied directly to the body.  He claims that he had to use the taser on Mr. Wilhere's upper leg because his jacket extended below the pockets of his pants and made it impossible to make effective physical contact in another location.  Def. Facts at ¶¶ 29-30

(citing Taser Incident Report of Deputy Zayas, attached as Ex. I to Def. Mot.; Zayas Dep. at 60).

The defendants state that, after being tasered, Mr. Wilhere complied with the deputies' orders and was handcuffed. Def. Facts at ¶ 31 (citing Hearing Trans. at 8; Incident Report).

C.    Plaintiff's Disorderly Conduct Hearing and Conviction

After Mr. Wilhere was arrested, the Tinicum Township Police were notified, and Mr. Wilhere was given over to the custody of Officer Righter.  Officer Righter issued a citation to Mr. Wilhere for disorderly conduct.  In the field titled "Nature of Offense," the citation provides that Mr. Wilhere "acted in a manner which served no legitimate purpose."  Wilhere Citation, attached as Ex. J to Def. Mot.

A hearing on the plaintiff's citation was held on May 17, 2007.  Mr. Wilhere was represented by counsel.  Deputy Nigro testified at the hearing.  Deputy Nigro's hearing testimony is as follows:  Deputy Zayas told Mr. Wilhere that he was under arrest and ordered him to place his arms behind his back.  Mr. Wilhere resisted by flailing his arms and refusing to put them behind his back.  Deputy Zayas warned Mr. Wilhere that he would be tasered if he did not comply.  Mr. Wilhere still failed to comply, and, after four or five seconds, Deputy Zayas applied the taser. Deputy Nigro acknowledged that Mr. Wilhere made no threats and

10

was not physically aggressive prior to his being told that he was under arrest. Hearing Trans. at 8:10-18, 22:2-15, 29:3-16.

Deputies Zayas and Mahoney did not testify at the hearing. Their accounts of the incident, however, are not consistent with Deputy Nigro's hearing testimony.[2] Mr. Wilhere did not testify on his own behalf.

The presiding judge did not find any facts and issued an order convicting Mr. Wilhere of disorderly conduct under 18 Pa.C.S. § 5503(a)(4). That section is a catch-all provision which provides that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." He was fined $300.00 plus fees and costs. Mr. Wilhere did not appeal his conviction. Order Imposing Sentence, attached as Ex. K to Def. Mot.; Wilhere Dep. at 155.

---

[2] Deputy Mahoney's testified at her deposition that Deputy Zayas tasered Mr. Wilhere after Mr. Wilhere "charged" Zayas by walking 5-6 feet and that Zayas himself walked 5-6 feet to meet Mr. Wilhere and apply the taser. Deputy Zayas testified at his deposition that he tasered Mr. Wilhere to assist Deputy Nigro, who had been struggling with Mr. Wilhere for two or three minutes. Mahoney Dep. at 151-152, 153:16-19, 154:10-25; Zayas Dep. at 44:1-16, 58-59, 64:2-8.

II.  Legal Analysis

       The Court first discusses whether the plaintiff's
disorderly conduct conviction precludes it from considering the
plaintiff's version of the facts.  After finding that it does
not, the Court concludes that it cannot grant summary judgment on
the defendants' qualified immunity defense because there are
disputed issues of fact as to crucial details of Mr. Wilhere's
arrest.  The Court further concludes that summary judgment cannot
be granted for the defendants on the sufficiency of evidence on
any of the plaintiff's claims.


       A.   Preclusive Effect of Disorderly Conduct Conviction

       In evaluating the sufficiency of the evidence for the
purposes of a motion for summary judgment, a court normally views
the evidence in the light most favorable to the non-moving party
and draws all reasonable inferences in its favor.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  For the purposes
of summary judgment, therefore, all of the factual disputes in
this case normally would be resolved in the plaintiff's favor.
Harvey v. Plains To. Police Dept., 421 F.3d 185, 194 n.12 (3d
Cir. 2005).

       The defendants argue that this case presents an
exception to the general rule because, under Pennsylvania law,
the plaintiff is collaterally estopped from questioning the facts

12

that support his conviction for summary disorderly conduct.  Def.
Mot. at 10 (citing M.B. ex rel. T.B. v. City of Philadelphia, 128
Fed. Appx. 217, 226 (3d Cir. 2005)).  The defendants argue that
this exception requires the Court to accept Deputy Nigro's
testimony from the plaintiff's disorderly conduct hearing as the
undisputed facts in this case.  They argue that, based upon this
testimony, the Court must accept as true, among other things,
that Mr. Wilhere was unruly and disorderly, that he refused
numerous commands to cease and desist, and that he physically
resisted efforts to place him under arrest.  Id.

 The Court, however, need not decide in this case
whether a summary conviction has the preclusive effect argued for
by the defendants.  Even if a more specific summary citation
could preclude a plaintiff from questioning certain facts, the
presiding judge in Mr. Wilhere's hearing did not provide the
factual basis for the conviction at the hearing.  Nor does the
summary citation issued to Mr. Wilhere by Officer Righter state
the facts for the charge.  It cannot be determined from the
conviction alone, therefore, what act or acts led to the
plaintiff's conviction for disorderly conduct.

 Nor does the relevant statutory provision under which
the plaintiff was charged give factual context to the grounds for
conviction.  The plaintiff was convicted under § 5503's catch-all
provision.  The provision itself provides no explanation as to

what act or acts created the hazardous or physically offensive condition for which the plaintiff was charged.[3]

Because none of the relevant facts from Deputy Nigro's testimony are found in the presiding judge's order, in the summary citation itself or within the statutory provision under which the plaintiff was charged, the Court cannot conclude which, if any, of those facts led to Mr. Wilhere's conviction.

Moreover, even if the Court were to assume that the facts listed by the defendants served as the basis for the plaintiff's conviction, the fact that Mr. Wilhere was found guilty of disorderly conduct does not necessarily mean the use of a taser against him was justified.

The sheriff office's policy is that sheriffs are not permitted to taser people who are not combative, who are not physically or verbally threatening or who are only passively physically resisting the commands of a sheriff. See Deposition of Corporal Brian Snyder ("Snyder Dep.") at 28:1-24, 29:1-22,

_____

[3]     More specific charges are available under § 5503.  For example, section 5503(a)(1) provides a specific charge for "engag[ing] in fighting, threatening, or in violent or tumultuous behavior."  Section 5503(b) further provides that an offense under the section is a misdemeanor of the third degree if the actor "persists in disorderly conduct after reasonable warning or request to desist."  That section provides that all otherwise disorderly conduct is a summary offense.  Mr. Wilhere was charged with a summary offense, not a misdemeanor.

attached as Ex. M to Def. Mot.[4]  In addition, the manual for the
taser used by Deputy Zayas warns against the application of the
taser in drive stun mode to the groin and states that the groin
"should only be targeted when officers are defending themselves
against violent attacks."  Taser x26 Manual Excerpt, attached as
Ex. V to Pl. Opp'n.

 Deputy Nigro's hearing testimony does not allege that
Mr. Wilhere was combative or physically or verbally threatening,
much less that the deputy sheriffs were defending themselves
against violent attacks.  Even taking Deputy Nigro's facts as
true, therefore, there would still be a material issue of fact as
to whether the use of a taser against Mr. Wilhere in his arrest
was excessive.


 B. <u>Qualified Immunity</u>

 Qualified immunity shields certain government
officials, including police officers, from liability for civil
damages unless their conduct violates clearly established
statutory or constitutional rights of which a reasonable person

---

 [4] As an example of "passively physically resisting," the
counsel for the plaintiff used the hypothetical of a person who
did not comply with a command to put his hands behind his back
within six seconds of the command, but did not physically resist
in the form of pushing away, attempting to escape or giving a
verbal refusal.  Corporal Snyder testified that, under the
policy, a sheriff may not taser a person who has passively
resisted in such a manner.  Snyder Dep. at 31:22-24, 32:1-8,
33:3-24, and 34:1-23.

would have known.  See Bayer v. Monroe County Children and Youth Services, 577 F.3d 186, 191 (3d Cir. 2009); Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).  Qualified immunity is an affirmative defense for which the defendants bear the burden of proof.  See Kopec 361 F.3d at 776.

Qualified immunity analysis involves two questions. One question is whether the facts alleged, taken in the light most favorable to the plaintiff, show that "the officer's conduct violated a constitutional right."  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  Another question is whether any such constitutional right was clearly established.  Under this inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.  Although it will often be useful to address these questions in the order just stated, it may be preferable to adopt a different ordering on some occasions.  The Court has discretion on this matter.  See Pearson v. Callahan, 129 S. Ct. 808, 818-21 (2009).

Determining whether a defendant is entitled to qualified immunity is an objective question ordinarily decided by the Court as a matter of law.  The inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Id. at 822.  Where historical facts relevant to the

16

immunity analysis remain in dispute, however, a court will not be able to resolve the issue of qualified immunity on summary judgment.  In such cases, a jury will need to determine the disputed historical facts material to deciding qualified immunity, usually through special interrogatories.  See Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).

The defendants argue that the deputy sheriffs are protected from the plaintiff's excessive force claims by qualified immunity.  To state a claim for excessive force under the Fourth Amendment, the plaintiff must show that a seizure occurred, that the seizure was unreasonable, and that the defendant in question was liable for the violation.  See Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).[5]  In order to determine the reasonableness of the defendants' actions, the Court must look to "the totality of the circumstance."  Graham v. Connor, 490 U.S. 386, 388 (1989).  Courts consider, among other factors, whether the plaintiff posed an immediate threat to the safety of the police officers or others, whether the plaintiff was actively resisting arrest, the duration of the action, and whether the physical force applied was of such an extent as to lead to unnecessary injury.  See id. at 396; see also Kopec 361 F.3d at 777.

---

[5]     In this case, neither party disputes that Mr. Wilhere's arrest constitutes a seizure.

In this case, there are several disputed material facts central to whether the use of force in this case was reasonable. The Court has already established that there is a disputed issue of material fact as to the appropriateness of Deputy Zayas's use of the taser.  In addition, it is disputed whether Mr. Wilhere was informed that he was under arrest before he was tasered, whether Mr. Wilhere actively resisted such arrest, whether Mr. Wilhere posed an immediate threat to the safety of the deputies or others, and the level and detail of each deputies' participation in the "struggle" surrounding the tasering.

Resolving these disputes in the favor of the plaintiff, a reasonable jury could conclude that the defendants' actions were unreasonable in light of Mr. Wilhere's passive resistance. Accordingly, the Court cannot rule on the defendants' qualified immunity defense at this time.  This ruling, however, is without prejudice, and the defendants may raise a qualified immunity defense after the disputed issues of fact are resolved.

C.   <u>Excessive Force</u>

Nor can summary judgment on the excessive force claims against Deputies Nigro and Mahoney be granted at this time, because there are significant issues of disputed material fact as to what happened on the night in question.  There is evidence

from which a reasonable jury could conclude that Deputies Mahoney and Nigro's actions constituted excessive force.

The plaintiff alleges physical contact with both defendants. The plaintiff testified that Deputy Mahoney struck him in the shoulder. The plaintiff also testified that Deputy Nigro shoved him with his stomach and chest and baited and taunted him to respond.

Even if such contact does not amount to excessive force, Deputies Nigro and Mahoney could be found liable for failing to intervene and protect Mr. Wilhere from the other deputies' application of force. A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force. See Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). Under the plaintiff's statement of the facts, Deputy Mahoney observed Deputies Nigro and Zayas physically confront him and did nothing to stop it. Deputy Nigro also failed to intervene, both after Deputy Mahoney allegedly struck the plaintiff in the shoulder and before Deputy Zayas applied the taser. Assuming that a jury finds that the tasering itself or any other contact violated the Fourth Amendment, the deputies could be found liable for failing to intervene and prevent that use of force.

D.   Monell

Municipalities and other local government units are included among those "persons" to whom § 1983 applies.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  A municipality, however, cannot be held liable under a theory of respondeat superior.  Id. at 691.  Instead, a plaintiff must establish that a policy or custom of the municipality caused the constitutional violation.  Id. at 694.

Municipal liability can arise from an official policy of inadequate training, supervision or investigation.  With regard to such claims of "liability through inaction," however, the plaintiff must show deliberate indifference on the part of the municipality.  See Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

Deliberate indifference can be shown by demonstrating that a constitutional violation was sufficiently foreseeable.  See City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989).  The Court of Appeals for the Third Circuit has applied a three part test to determine whether a municipality's failure to train or supervise amounts to deliberate indifference.  Under the test, it must be shown that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employee mishandling, and (3) the wrong choice by an employee will frequently cause

deprivation of constitutional rights.  See Carter v. City of
Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999).

The county's training for the use of a taser satisfies
the three-factors set out in Carter.  The county knows that its
sheriffs are often presented with the difficult decision of when
and where to use their tasers on an arrestee and that the wrong
choice will result in the deprivation of the arrestee's
constitutional rights.

Viewing the evidence in the light most favorable to the
plaintiff, a jury could find that the training provided to the
deputy sheriffs in the use of their tasers is deficient.  The
manual for the taser used by the deputy sheriffs warns of the
dangers inherent in applying the taser in drive stun mode to the
actor's groin.  The manual advises that the taser should be used
in such a way only when the officer is defending himself from a
violent attack.  Corporal Snyder, however, testified that he
instructed the deputy sheriffs that it was permissible for them
to apply their tasers to a person's groin in drive stun mode.  He
further testified that the deputy sheriffs were taught only to
avoid the head, face and eye area.  Snyder Dep. at 18:22-24,
19:1-11, and 23:8-14.  A jury could find that evidence of such
training, in contravention of the taser manual's instructions,
amounts to the deliberate indifference necessary to sustain a
Monell claim against the defendant county.

E.    <u>State Law Assault and Battery</u>

Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and battery is committed whenever the violence menaced in an assault is actually done." <u>Renk v. City of Pittsburgh</u>, 537 A.2d 289, 293 (Pa. 1994).  In making a lawful arrest, police officers are permitted to use such force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the officer's conduct constitutes an assault and battery.  <u>Id.</u>

The defendants' argument for summary judgment on these claims fails for the same reasons that their excessive force arguments fail.  There are disputes of material fact that must be resolved before it can be determined whether the force used by Deputy Zayas was reasonable and necessary.

An appropriate order follows separately.